# EXHIBIT A



Not Reported in F.Supp.
Not Reported in F.Supp., 1993 WL 138954 (S.D.N.Y.), 1993-2 Trade Cases P 70,331
**(Cite as: 1993 WL 138954 (S.D.N.Y.))**

Page 1

H
United States District Court, S.D. New York.
STAUDINGER, Plaintiff,
v.
EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES and Marie Shaffron, Defendants.
No. 92 Civ. 8071 (LJF).

April 28, 1993.

*Order and Opinion*

FREEH, District Judge.

\*1 Defendant Educational Commission for Foreign Medical Graduates ("ECFMG") and its Vice President of Operations, defendant Marie Shaffron ("Shaffron"), move to dismiss plaintiff Robert Staudinger's ("Staudinger") complaint. For the reasons stated below, the motion is granted in part and denied in part. A pretrial conference will be held on *May 11, 1993,* at 8:30 a.m.

BACKGROUND

Plaintiff Staudinger, a resident of New York County and a citizen of Austria, is a graduate of the medical school at the University of Innsbruck, Austria, and is currently employed by New York Medical College as a research associate. (Complaint ¶ 1). New York Medical College has offered Staudinger a residency position on the condition that he obtain certification from defendant ECFMG. (*Id.*).

ECFMG is a non-profit organization which assesses the qualifications of foreign medical school graduates applying to residency programs in the United States. (*Id.* ¶ 13). ECFMG administers examinations to applicants, and also provides them with a certificate indicating that they have complied with ECFMG requirements. (*Id.* ¶ 14). Although Staudinger claims that an ECFMG certificate is a prerequisite for a license to practice medicine in New York or entry into an accredited residency program at a New York hospital (*Id.* ¶¶ 15- 16, 85), as discussed more fully below, the provisions upon which he relies do not impose any such requirement. See New York Education Law § 6528; N.Y.Comp.Codes R. & Regs., Title 10, § 405.4(f); Department of Health Memorandum dated October 29, 1984. [FN1]

Staudinger has completed a six-year medical school program at the University of Innsbruck, which program includes a minimum of 2 1/2 years of clinical practice. (Complaint ¶ 28). Staudinger has also taken the ECFMG Science and English exams, and has passed both. (*Id.* ¶ 18). However, because he has not completed the three-year Austrian residency program, Staudinger is not licensed to practice medicine in Austria. (*Id.* ¶¶ 28-31). As a result, ECFMG denied his application for certification. (*Id.* ¶ 19). Staudinger's appeal of that decision was denied. (*Id.* ¶¶ 20-24).

ECFMG requirements for certification vary depending on the citizenship of the applicant. For example, American citizens who attend medical school in Austria may be certified without completing an Austrian residency or obtaining an Austrian license. By comparison, Austrian citizens such as Staudinger are required to have both a medical degree and a license to practice medicine in Austria. (*Id.* ¶ 26).

In his complaint, Staudinger seeks a declaratory judgment that (1) ECFMG's and Shaffron's policy regarding certification of foreign medical school graduates is "discriminatory per se," in violation of the 14th amendment and 42 U.S.C. § 1983 (Counts 1, 3, 5, 7, and 8); [FN2] (2) ECFMG's certification policy is "unreasonable, arbitrary, capricious, malicious and derives solely from ... motivations ultra vires of the scope of ECFMG's mission" (Counts 2 and 6); (3) ECFMG's certification policy violates certain valid international treaties (Count 4); (4) ECFMG monopolizes the "practice of medicine," in violation of the Sherman Act, 15 U.S.C. § 2, and the Donnelly Act, N.Y. General Business Law § 340 (Count 9); and (5) defendants have intentionally inflicted emotional distress upon him (Count 10).

\*2 Defendants move to dismiss all of Staudinger's claims on the grounds that he has failed to state a claim upon which relief can be granted. Fed.R.Civ.P.

Not Reported in F.Supp. Page 2
Not Reported in F.Supp., 1993 WL 138954 (S.D.N.Y.), 1993-2 Trade Cases P 70,331
**(Cite as: 1993 WL 138954 (S.D.N.Y.))**

12(b)(6).

## DISCUSSION

A complaint should be dismissed under Rule 12(b)(6) only if "it appears 'beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " Goldman v. Belden, 754 F.2d 1059, 1065 (2d Cir.1985) (quoting Conley v. Gibson, 78 S.Ct. 99, 101-102 (1957)). In evaluating a motion to dismiss on the pleadings, a court must read the allegations in the complaint "generously" and draw all inferences in favor of the party opposing the motion--here, Staudinger. Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir.1989).

### 1. *Constitutional Claims*

ECFMG argues that Staudinger's claims under the 14th amendment and 42 U.S.C. § 1983 (Counts 1, 3, 5, 7, and 8) must be dismissed because Staudinger has failed to plead the requisite state action. (Motion at 4). It is well-established that a plaintiff asserting a violation of the 14th Amendment must demonstrate that the challenged action "may fairly be said to be that of the States." Blum v. Yaretsky, 102 S.Ct. 2777, 2785 (1982) (quoting Shelley v. Kraemer, 68 S.Ct. 836, 842 (1948)). Similarly, in order to maintain a cause of action under 42 U.S.C. § 1983, a plaintiff must show that the alleged constitutional violation was committed "under color of state law." Hadges v. Yonkers Racing Corp., 918 F.2d 1079, 1081 (2d Cir.1990), cert. denied, 111 S.Ct. 1583 (1991). However, whether framed as "state action" for purposes of the 14th amendment or action "under color of state law" for purposes of § 1983, the applicable legal standards are the same. See Lugar v. Edmonson Oil Co., Inc., 102 S.Ct. 2744, 2752 (1982) ("If the challenged conduct constitutes state action [for purposes of the 14th Amendment], then that conduct was also action under color of state law and will support a suit under § 1983.").

Staudinger's claims are somewhat unusual in that his alleged injuries are the result of actions taken by two private parties--ECFMG and New York Medical College. New York Medical College has apparently offered Staudinger a medical residency on the condition that he obtain certification from ECFMG. (Complaint ¶ 1). Nothing in the pleadings indicates why the Medical College imposed this requirement, and Staudinger makes no claim against that party.

ECFMG has declined to certify Staudinger because even though he has passed all the necessary examinations within the requisite time period, he is not licensed to practice medicine in Austria. According to Staudinger, this refusal constitutes a violation of his constitutional rights "under color of state law" because New York "delegates the function of assessing [a]pplicants' readiness to ECFMG, thus causing a symbiotic relationship to exist[ ]" between the two. (Complaint ¶ 85).

*3 New York does require that graduates of foreign medical schools who are applying to postgraduate training programs in the state to have passed "within three attempts" the ECFMG examination. N.Y.C.R.R., Title 10, § 405.4(f)(1)(i)(b). But contrary to Staudinger's claims, New York does not require ECFMG certification for medical licensure or acceptance into a residency program. In fact, New York Education Law § 6528, which sets forth the licensing requirements for foreign medical school graduates, specifically states that ECFMG certification cannot be required for otherwise qualified candidates:

(a) Notwithstanding any other provisions of this article or any law to the contrary, an individual who at the time of his enrollment in a medical school outside the United States is a resident of the United States shall be eligible for licensure in this state if he has satisfied the requirements of [Education Law § 6524(1), (5), (6), (7), and (8) ] and:
(1) has studied medicine in a medical school located outside the United States which is recognized by the World Health Organization;
(2) has completed all of the formal requirements of the foreign medical school except internship and/or social service;
(3) has attained a score satisfactory to a medical school approved by the Liaison Committee on Medical Education on a qualifying examination acceptable to the state board for medicine, and has satisfactorily completed one academic year of supervised clinical training under the direction of such medical school;
(4) has completed the post-graduate hospital training required by the Board of all applicants for licensure; and
(5) has passed the examination required by the Board of all applicants for licensure.
(b) Satisfaction of the requirements of paragraphs (1), (2), and (3) of subdivision (a) of this section shall be in lieu of the completion of any foreign internship and/or social service requirements, and no such requirements shall be a condition of licensure as a physician in this State.
(c) *Satisfaction of the requirements of paragraphs*

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.   Page 3
Not Reported in F.Supp., 1993 WL 138954 (S.D.N.Y.), 1993-2 Trade Cases P 70,331
**(Cite as: 1993 WL 138954 (S.D.N.Y.))**

*(1), (2), and (3) of subdivision (a) of this section shall be in lieu of certification by the Educational Council for Foreign Medical Graduates, and such certification shall not be a condition of licensure as a physician in this State for candidates who have completed the requirements of subdivision (a) of this section.*
*(d) No hospital licensed by this State, or operated by the State or a political subdivision thereof, or which receives state financial assistance, directly or indirectly, shall require an individual who has satisfied the requirements of paragraphs (1), (2), and (3) of subdivision (a) of this section, and who at the time of his enrollment in a medical school outside the United States is a resident of the United States, to satisfy any further education or examination requirements prior to commencing an internship or residency.*

\* \* \*

[ (Emphasis added) ].
**\*4** *But see* Zer Letter to Court dated March 16, 1993, Ex. A at 2 (DOH letter indicating that ECFMG certificate is required in New York).

Even if ECFMG certification is required by the State, the Department of Health ("DOH") has specifically warned New York hospitals that such certification, standing alone, is insufficient to ensure that foreign medical school graduates are qualified. *See* Memorandum at 4 ("The Committee of Inquiry on Medical Credentials concluded that it is *not* sufficient to rely on the Educational Commission for Foreign Medical Graduates (ECFMG) ... to assure that only qualified persons are admitted to residency positions.") (emphasis in original). As a result, the DOH has instructed hospitals that "[c]redentials verification is the responsibility of the facility in which the physician is providing medical services." (*Id.*). [FN3]

Given these provisions, it is clear that New York does not totally defer to ECFMG to screen the qualifications of foreign medical school graduates. To the extent, however, that New York does allow ECFMG to perform some screening functions, the Court must determine whether that conduct constitutes "state action" for purposes of Staudinger's constitutional claims.

The conduct of a private actor such as ECFMG qualifies as state action when (1) the private actor performs important government functions, *Jackson v. Metropolitan Edison Co.*, 95 S.Ct. 449, 453 (1974); (2) "when '[t]he State has so far insinuated itself into a position of interdependence with [the private party] that it must be recognized as a joint participant in the challenged activity' " *Hadges*, 918 F.2d at 1081 (quoting *Burton v. Wilmington Parking Authority*, 81 S.Ct. 856, 862 (1961)); or (3) " 'there is a sufficiently close nexus between the State and the challenged action' that the private party's action 'may be fairly treated as that of the State itself.' " [FN4] *Id.* (quoting *Jackson*, 95 S.Ct. at 453). Because Staudinger only appears to rely on the first and third of these tests (Opposition at 15), the Court need not address the other. [FN5]

a. *Public Function Test*

The Supreme Court has held that the actions of a private entity may be deemed state action when that party exercises powers that are "traditionally the exclusive prerogative of the State." *Jackson*, 95 S.Ct. at 454. The primary inquiry under this test is whether the delegated function is exclusively the State's. *See Flagg Brothers, Inc. v. Brooks*, 98 S.Ct. 1729, 1734-35 (1978) ("While many functions have been traditionally performed by governments, very few have been 'exclusively reserved to the State.' ").

The work performed by ECFMG--testing and otherwise certifying that foreign medical school graduates are qualified to practice medicine--does not fall within the narrow category of functions which have been considered exclusively the State's. *See, e.g., Edmonson v. Leesville Concrete Co., Inc.*, 111 S.Ct. 2077, 2085 (1991) (jury selection); *Terry v. Adams*, 73 S.Ct. 809, 813-14 (1953) (primary elections); *Marsh v. Alabama*, 66 S.Ct. 276, 279-80 (1946) (all municipal functions).

**\*5** While the licensing and regulation of physicians is a "public function," that function is not performed solely by the State. To the contrary, as the DOH memorandum indicates, hospitals and other medical facilities are also directly involved in the screening and monitoring process. *See Rendell-Baker v. Kohn*, 102 S.Ct. 2764, 2772 (1982) (while education of "maladjusted high school students" is a "public function, ... that is only the beginning of the inquiry"). *See also Langston v. ACT*, 890 F.2d 380, 384-85 (11th Cir.1989) (fact that private organization administers college entrance examination and thus "take[s] on [that] public function" does not make organization a state actor); *Johnson v. Educational Testing Service*, 754 F.2d 20, 25 (1st Cir.) ("formulation, grading, and reporting" of standardized tests does not constitute "exclusive public function"), *cert. denied*, 105 S.Ct. 3504

Not Reported in F.Supp.
Not Reported in F.Supp., 1993 WL 138954 (S.D.N.Y.), 1993-2 Trade Cases P 70,331
(Cite as: 1993 WL 138954 (S.D.N.Y.))

Page 4

(1985).

Absent some claim that New York is "attempt[ing] to avoid its constitutional duties by a sham arrangement," *id.* at 2772 n. 7, the State is entitled to delegate to ECFMG certain duties related to the screening of foreign medical school graduates. The mere fact that a private entity performs functions which could have been performed by the State does not convert that entity's conduct into "state action." *Id.* at 2772 ("That a private entity performs a function which serves the public does not make its acts state action."). Rather, the determinative factor is whether the private entity is performing functions which are traditionally performed solely by the State. Because that is not the case here, Staudinger cannot rely on ECFMG's alleged "public function" to support a claim of state action.

b. *Nexus between State and ECFMG*

Staudinger further argues that a sufficiently close nexus exists between ECFMG and the State of New York that ECFMG's actions "may fairly be attributed to the State." *Blum, 102 S.Ct. at 2785. See also Lugar, 102 S.Ct. at 2753* (same). The Court disagrees. Although state regulation or funding, standing alone, would not establish state action, Staudinger does not even contend that New York regulates or finances ECFMG. *Compare Blum, 102 S.Ct. at 2786*. Moreover, although New York State does allow private entities--hospitals and other medical facilities--to defer to ECFMG's certification decisions, Staudinger does not assert that New York "exercised coercive power or has provided ... significant encouragement, either overt or covert," to ECFMG. *Id.*

The Supreme Court has emphasized that "[m]ere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives under the terms of the Fourteenth Amendment." *Id.* But Staudinger does not allege anything more than such approval or acquiescence. As a result, he has failed to demonstrate a sufficiently close relationship between ECFMG and the State to say that ECFMG is a "state actor." *Lugar, 102 S.Ct. at 2754. See Langston, 890 F.2d at 385* ("The reliance of state institutions on the validity of test results is not enough to convert ACT's security measures into state action."). Accordingly, Staudinger's constitutional and § 1983 claims (Counts 1, 3, 5, 7, and 8) must all be dismissed.

2. *Antitrust Claims*

*6 ECFMG argues that Staudinger's claims under the Sherman and Donnelly Acts (Count 9) must also be dismissed on the grounds (1) Staudinger has not and cannot define a relevant market in which ECFMG has monopoly power; (2) Staudinger has not and cannot claim antitrust injury; and (3) the Donnelly Act does not cover the type of unilateral conduct alleged here. (Motion at 16).

Staudinger concedes that the Donnelly Act does not apply to a "unilateral exertion of power." (Opposition at 24). *See Otis Elevator Co. v. John J. Reynolds, Inc., 366 N.Y.S.2d 256, 258 (1975)* (§ 340 of New York's General Business law "prohibits only bilateral activity in restraint of trade"). In his complaint, however, Staudinger asserts only such unilateral activity. (*See* Complaint ¶ ¶ 106-07). Absent some allegation that ECFMG participated in a "contract, agreement, arrangement or combination" to restrain trade, Staudinger has no cause of action under the Donnelly Act. *See* New York General Business Law § 340(1). Accordingly, that claim must be dismissed.

Section 2 of the Sherman Act does apply to unilateral action such as that alleged in Staudinger's complaint. In order to make out this claim, a plaintiff must allege "as a threshold requirement that the defendant enjoys monopoly power in the relevant market." *United States v. Grinnell Corp., 86 S.Ct. 1698, 1703-04 (1966)*.

Staudinger apparently claims that two relevant markets exist here--the certification of foreign medical school graduates and/or the practice of medicine. (Complaint ¶ ¶ 106-07). However, even if "the practice of medicine" constitutes a separate market for antitrust purposes, it is unlikely that ECFMG, which only deals with and certifies graduates of foreign medical schools, exercises monopoly power in that market. Staudinger apparently recognizes this deficiency in his complaint because in a letter to the Court dated January 11, 1993, his attorney does not mention any market in the practice of medicine. Thus, the Court shall assume that this claim has been abandoned.

To the extent that Staudinger alleges that ECFMG exercises monopoly power in the market for foreign medical school graduate testing and/or certification-- a claim which was raised for the first time in opposition to the motion to dismiss--ECFMG argues that Staudinger has no standing to assert that claim. Antitrust plaintiffs must demonstrate more than a

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.  Page 5
Not Reported in F.Supp., 1993 WL 138954 (S.D.N.Y.), 1993-2 Trade Cases P 70,331
**(Cite as: 1993 WL 138954 (S.D.N.Y.))**

mere "injury in fact." Those potential parties must show (1) that they have suffered an "antitrust injury," and (2) that they are otherwise proper plaintiffs to bring the action at issue. [FN6] *Associated General Contractors, Inc. v. California State Council of Carpenters,* 103 S.Ct. 897, 907 (1983); *Todorov v. DCH Healthcare Authority,* 921 F.2d 1438, 1449 (11th Cir.1991); *Volvo No. America Corp. v. Men's International Professional Tennis Council,* 857 F.2d 55, 66 (2d Cir.1988). At this early stage in the case, however, the Court cannot find, as a matter of law, either (1) that ECFMG does not exercise monopoly power in the market for the testing and certification of foreign medical school graduates; or (2) that competition in that market has not been reduced as a result of ECFMG's conduct. [FN7] As a result, ECFMG's motion to dismiss Staudinger's Sherman Act claim is denied.

3. *Other Claims*

*7 Staudinger further claims that ECFMG's certification policy is "unreasonable, arbitrary, capricious, malicious and derives solely from ... motivations ultra vires of the scope of ECFMG's mission." (Counts 2 and 6). Even under the generous pleading standards of Fed.R.Civ.P. 8(a), these causes of action do not appear to set out separate claims for relief. [FN8] The same holds true for Staudinger's claims that ECFMG's certification policy violates the "Mutual Recognition of Diplomas" agreement between Austria and other European countries. [FN9] (Count 4). Accordingly, all of these claims are dismissed.

Finally, although Staudinger claims that ECFMG intentionally inflicted emotional distress upon him (Count 10), he fails to allege the necessary elements of that claim. *See Knudsen v. Quebecor Printing (U.S.A.) Inc.,* 792 F.Supp. 234, 240 (S.D.N.Y.1992) (in New York, four elements of intentional infliction of emotional distress claim are that (1) the defendant engaged in "extreme and outrageous" conduct; (2) the defendant intended to cause or knew that his conduct would cause emotional distress; (3) the plaintiff did in fact suffer severe emotional distress; and (4) the defendant's conduct caused plaintiff's injuries). Therefore, this claim must also be dismissed.

For the foregoing reasons, ECFMG's motion to dismiss is granted in part and denied in part. A pretrial conference will be held on *May 11, 1993,* at 8:30 a.m.

SO ORDERED.

FN1. In considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the Court may rely on any documents referenced in the complaint itself. *See Cortec Industries, Inc. v. Sum Holding L.P.,* 949 F.2d 42, 46-48 (2d Cir.1991) (in ruling on 12(b)(6) motion, court may consider documents referred to and relied upon by the complaint, as long as "plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint"), *cert. denied,* 112 S.Ct. 1561 (1992).

FN2. Staudinger briefly mentions 42 U.S.C. § 1988 (Complaint ¶ 12), but does not appear to state a separate claim for relief under that provision.

FN3. The other provision cited in Staudinger's complaint also fails to support his claims. N.Y.Comp.Codes R. & Regs., Title 10, § 405.4(f) does not refer to ECFMG certification, but merely states that in order to be accepted as a resident in a New York hospital, foreign medical school graduates must have passed the ECFMG examination within three attempts.

FN4. *See also National Collegiate Athletic Association v. Tarkanian,* 109 S.Ct. 454, 462 (1988) (state action may be found where "the State creates the legal framework governing the conduct, if it delegates its authority to the private actor, or sometimes if it knowingly accepts the benefits derived from unconstitutional behavior") (citations omitted); *Lugar,* 102 S.Ct. at 2753 (primary inquiry is whether "the conduct allegedly causing the deprivation of a federal right [may] be fairly attributable to the State").

FN5. However, for the same reasons stated below, it does not appear that New York has "insinuated itself" into a position of interdependence with ECFMG for purposes of certifying foreign medical school graduates for medical residencies.

FN6. The Supreme Court has defined "antitrust injury" as "injury of the type the antitrust laws were intended to prevent and that flows from that which makes the

Not Reported in F.Supp.  
Not Reported in F.Supp., 1993 WL 138954 (S.D.N.Y.), 1993-2 Trade Cases P 70,331  
(Cite as: 1993 WL 138954 (S.D.N.Y.))

Page 6

defendants' acts unlawful. The injury should reflect the anticompetitive effect either of the violations or of anticompetitive acts made possible by the violation. It should, in short, be 'the type of loss that the claimed violations ... would likely cause.'" *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 97 S.Ct. 690, 697 (1977).

Even if a plaintiff establishes antitrust injury, it must also show that it is "an efficient enforcer of the antitrust laws." *Todorov,* 921 F.2d at 1449. Among the other factors that courts consider in evaluating whether a particular plaintiff is appropriate are (1) the directness of the asserted injury; (2) "the existence of an identifiable class of persons whose self-interest would normally motivate them to vindicate the public interest in antitrust enforcement;" (3) the speculativeness of the alleged injury; and (4) the difficulty of identifying damages and apportioning them among direct and indirect victims of the alleged conduct, in order to avoid duplicative recoveries. *Volvo,* 857 F.2d at 66 (*quoting Associated General Contractors,* 103 S.Ct. at 909-12).

FN7. ECFMG argues that Staudinger is neither a "customer" of ECFMG's services nor "a competitor in the credentialing 'business' injured by ... ECFMG's monopoly." (Motion at 19). To the extent, however, that Staudinger seeks to opt out of the ECFMG certification "requirement" and prove his credentials by other means, he may, in fact, be a competitor of ECFMG.

FN8. It is not clear what Staudinger means when he asserts that ECFMG's conduct is "*ultra vires* of the missions ECFMG was designed to guard." (Complaint ¶ 70). The *ultra vires* doctrine is normally asserted as a defense when a corporation exercises powers beyond those granted to it by law or its charter, articles of incorporation, or bylaws. *Lorisa Capital Corp. v. Gallo,* 506 N.Y.S.2d 62, 73 (2d Dept.1986). Here, Staudinger not only asserts the doctrine as a claim for relief rather than a defense, he fails to specify the particular law or charter provision that ECFMG allegedly violated.

The *ultra vires* concept has also been used in cases discussing the 11th amendment. *See Farid v. Smith,* 850 F.2d 917, 922 (2d Cir.1988) (Supreme Court moving away from *ultra vires* theory in 11th Amendment jurisprudence). Under that theory, a state officer acting *ultra vires* -- that is, "without any authority whatever" --cannot assert 11th amendment immunity as a defense. *Minotti v. Lensink,* 798 F.2d 607, 609 (2d Cir.1986), *cert. denied,* 107 S.Ct. 2484 (1987). However, Marie Shaffron, the only individual defendant in this case, is a Vice President of ECFMG, not a state official. (Complaint ¶ 3). As a result, this second *ultra vires* theory also does not apply to Staudinger's claims.

FN9. Staudinger does not allege that the United States is a party to the European treaty at issue. Thus, it is unclear how ECFMG can be bound by the terms of that treaty.

Not Reported in F.Supp., 1993 WL 138954 (S.D.N.Y.), 1993-2 Trade Cases P 70,331

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.