UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------

| | | |
|---|---|---|
| DONALD PAPAY, | ) | CASE NO. 07-civ-3858 |
|     Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| VIRGINIA HASELHUHN as ASSISTANT | ) | |
| EXECUTIVE  DIRECTOR, AMERICAN | ) | |
| REGISTRY OF RADIOLOGIC | ) | |
| TECHNOLOGISTS,   RICHARD F. DAINES as | ) | |
| COMMISSIONER, STATE OF NEW YORK | ) | |
| DEPARTMENT OF HEALTH, ADELA | ) | |
| SALAME-ALFIE as DIRECTOR, STATE OF | ) | |
| NEW YORK DEPARTMENT OF | ) | |
| HEALTH - - BUREAU OF | ) | |
| ENVIRONMENTAL RADIATION | ) | |
| PROTECTION  (in his official capacity); | ) | |
|     Defendants. | ) | |

-------------------------------------------------------------

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS VIRGINIA HASELHUHN AND AMERICAN REGISTRY OF RADIOLOGIC TECHNOLOGISTS' RULE 12(b)(6) MOTION TO DISMISS

INTRODUCTION

Plaintiff's complaint contains well grounded allegations of fact and law which Plaintiff asserts against Defendants ARRT, Haselhuhn as its Assistant Executive Director, Richard F. Daines as Commissioner, State Of New York Department Of Health, Adela Salame-Alfie As Director of the State of New York Department of Health - - Bureau of Environmental Radiation Protection. The Motion must be denied. Plaintiff's complaint should not be dismissed.

STATEMENT OF FACTS

Plaintiff incorporates the facts alleged in the complaint and the Affirmation of Donald Papay in Opposition to Defendant ARRT's Rule 12(b)(6) Motion to Dismiss.

ARGUMENT

Defendant's Motion violates Local Rule 6.1 in that it contains no affirmation in support.   Instead, there is only what purports to be a memorandum of law, which contains some factual allegations while strategically ignoring other factual allegations set forth in Plaintiff's amended complaint, (such as Am. Compl. ¶¶ 32-33), inapplicable law, and bold assertions about how Plaintiff definitely failed to pass the exam, without offering any documents to prove such a claim. Defendant is trying to shift the focus onto Plaintiffs supposed "failure" of the exam, rather than focusing on the issue at hand: That Plaintiff was not allowed to see his test scores, despite having significant cause to believe that his test scores were skewed, thereby being denied due process.

LEGAL STANDARD FOR FAILURE TO STATE A CLAIM

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. _Browning v. Clinton_, 292 F.3d 235, 242 (D.C. Cir. 2002). The complaint need only set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests. _Kingman Park Civic Ass'n v. Williams_, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (citing FED. R. CIV. P. 8(a)(2) and _Conley v. Gibson_, 355 U.S. 41, 47 (1957)). "Such simplified notice pleading is made possible by the liberal opportunity for discovery and the other pre-trial procedures established by the Rules to disclose more precisely the basis of both claim and defense to define more narrowly the disputed facts and issues." _Conley_, 355 U.S. at 47-48 (internal quotation marks omitted). It is not necessary for the plaintiff to plead all elements of his prima facie case in the complaint, _Swierkiewicz v. Sonoma N.A._, 534 U.S. 506, 511-14 (2002), or "plead law or

match facts to every element of a legal theory," *Krieger v. Fadely*, 211 F.3d 134, 136

(D.C. Cir. 2000) (internal quotation marks and citation omitted).

Accordingly, "the accepted rule in every type of case" is that a court should not dismiss a complaint for failure to state a claim unless the defendant can show beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Warren v. Dist. of Columbia*, 353 F.3d 36, 37 (D.C. Cir. 2004); *Kingman Park*, 348 F.3d at 1040. Thus, in resolving a Rule 12(b)(6) motion, the court must treat the complaint's factual allegations – including mixed questions of law and fact – as true and draw all reasonable inferences therefrom in the plaintiff's favor. *Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C. Cir. 2003); *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003); *Browning*, 292 F.3d at 242. While many well-pleaded complaints are conclusory, the court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *Warren*, 353 F.3d at 39; *Browning*, 292 F.3d at 242.

## DEFENDANT ARRT IS A STATE ACTOR

Defendant ARRT asserts that it is not a State Actor, and therefore cannot be held liable under 42 U.S.C. § 1983 or FOIL.  However, ARRT's actions in administering the exam and licensing individuals to Practice radiology are governed by NY Pub. Health Law, § 3500 et seq. and the New York State Department of Health (hereinafter DOH). Moreover, ARRT's attorney, Shari L. Jerde, in her July 18 letter to the Court stated on page 3, "The State of New York regulates the licensure and practice of radiography technicians in the state, which are valid state actions." She now contradicts her own

statements. In Licensing radiologists, Defendant MUST abide by the states rules, regulations and procedures specifically enacted by the state for this type of licensure.

Furthermore, NY Pub. Health Law specifically so designates ARRT to perform some of the State DOH duties "in lieu" of the State. § 3506 (6). Those examinations and licensing requirements which are designated by New York State to ARRT are subject to the provisions of the N. Y. Public Health Law § 3500 et seq. Although it is originally the State DOH's requirement to examine and license applicants to practice radiologic technology, the State DOH has so designated ARRT. (Pub. Health Law Art. 35, § 3506 (5)). See also Page 4 of State Defendant's Memorandum in Support of its Motion to Dismiss. 10 NYCRR § 89.18 provides:

> Every applicant for licensure, unless he/she holds a certificate of the America Registry of Radiologic Technologists or certificate, registration to license of another state or political subdivision of the United States…shall be required to pass an examination administered for the department by the American Registry of Radiologic Technologists as prescribed in article 35 of Public Health Law with a grade of not less than 75.

A private activity is deemed state action: (1) when there is a "close nexus" between the private and state actors, (2) when the private activity is a product of "state compulsion," **or** (3) when the private activity is a public function <u>Turturro v. Continental Airlines</u>, 334 F.Supp.2d 383 (S.D.N.Y., 2004) (citing <u>Okunieff v. Rosenberg</u>, 996 F.Supp. 343, 347-57 (S.D.N.Y.1998), aff'd, 166 F.3d 507 (2d Cir.1999)(per curiam), cert. denied, 528 U.S. 1144, 120 S.Ct. 1002, 145 L.Ed.2d 945 (2000))(emphasis added).

In analyzing the 3 relationship tests that Defendant, ARRT argues about in its Memorandum, which include the "Symbiotic Relationship Test", the "Public Function Test" and the "State Compulsion Test", and also in analyzing the "Nexus/Joint Action Test", it is clear that Defendant ARRT is indeed a State Actor.

Symbiotic Test

The Symbiotic Test is not widely accepted in the Second Circuit. See Murphy v.

New York Racing Ass'n, Inc., 76 F.Supp.2d 489 (S.D.N.Y., 1999):

> "Th[e] "symbiotic relationship test" for establishing state action was
> fashioned by the Supreme Court Burton v. Wilmington Parking Authority, 365
> U.S. 715, 725, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). In attempting to satisfy the state
> action requirement under this rubric, Plaintiff has set herself a difficult task
> indeed — for two reasons. First, it is highly questionable whether this test remains
> viable…"

Murphy also cites *1A Martin A. Schwartz, Section 1983 Litigation § 5.11, at 529*

*(3d ed.1997).*

> "[a]lthough Burton has never been overruled, it has been narrowed to the
> point of being virtually unworkable as a state action doctrine. This narrowing
> began in Burton itself, where the Court stressed that its holding was limited to
> cases in which "a state leases public property [to a private firm] in the manner and
> for the purpose shown to have been the case" there. Burton, 365 U.S. at 726, 81
> S.Ct. 856. This holding was narrowed still further Rendell-Baker v. Kohn, 457
> U.S. 830, 843, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982), where the Court stated that
> a vital element of Burton's holding was the conclusion that "the State profited
> from the [private actor's] discriminatory conduct." As a result of this narrowing
> process, the Court — with one possible exception—has rejected every attempt to
> establish state action on the basis of Burton."

The Symbiotic Test is inapplicable.

Alternatively, if the Court finds that the Symbiotic Test does apply, "Pursuant to

this test, the actions of a private party constitute State Action if the State has "so far

insinuated itself into a position of interdependence with [the private party] that it must be

recognized as a joint participant in the challenged activity." Carson v. Wilmington, C.A.

No. 05C-10-002-PLA (Del. Super. 8/4/2006) (Del. Super., 2006).

The DOH accepts ARRT's examination "in lieu" of its own examination. In fact,

DOH requires license applicants to take ARRT exam before becoming licensed to

practice radiological technology in New York State. See State Defendant's complaint, at

page 4.  Moreover, the State has codified this requirement into 10 NYCRR § 89 *et seq*,

directly naming ARRT as its "Actor" in administering and grading the exams.

<u>Public Function Test</u>

The Public Function Test requires that the private entity exercise which are

traditionally exclusively reserved for the State. <u>Jensen v. Farrel Lines, Inc.</u>, 625 F.2d 379,

384 (2d Cir. 1980). If the private actor is functioning as the government, that private actor

becomes the state for purposes of state action. See, e.g., <u>Marsh v. Alabama</u>, 326 U.S. 501,

506, 66 S.Ct. 276, 278, 90 L.Ed. 265 (1946) ("the owners of privately held bridges,

ferries, turnpikes and railroads may not operate them as freely as a farmer does his

farm"); <u>Gorenc</u>, 869 F.2d at 508 (citing <u>Terry v. Adams</u>, 345 U.S. 461, 469-70, 73 S.Ct.

809, 813, 97 L.Ed. 1152 (1953)).

"The public function doctrine focuses less on the degree of government

involvement and more on the nature of the function performed by an entity which might

otherwise be considered private. If the function is one which is traditionally within the

exclusive province of government, the entity performing that function may be considered

to be an instrumentality of the government." <u>Janusaitis v. Middlebury Volunteer Fire</u>

<u>Dept.</u>, 607 F.2d 17 (C.A.2 (Conn.), 1979).

The Supreme Court in <u>Brentwood Academy v Tennessee Second. Sch. Athletic</u>

<u>Ass'n</u>, 531 U.S. 288, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001) "treated a nominally private

entity as a state actor when it is controlled by an "agency of the State,"(citing the

decisions in <u>Pennsylvania v. Board of Directors of City Trusts of Philadelphia</u>, 353 U.S.

230, 231 (1957) (per curiam), when it has been delegated a public function by the State,

cf., e.g., <u>West v. Atkins</u>, 487 U.S. 42 (1988),at 56; <u>Edmonson v. Leesville Concrete Co.</u>,

500 U.S. 614, 627-628 (1991), when it is "entwined with governmental policies" or when government is "entwined in [its] management or control," Evans v. Newton, 382 U.S. 296, 299, 301 (1966).).

Indeed, the DOH has issued specific legislation as to the requirements and acceptance of the ARRT examination. 10 NYCRR Section 89.17 provides:

> (c) This section shall only apply if the American Registry of Radiologic Technologists or the state or political subdivision of the United States submits to the department for its review after the holding of each examination a copy of the examination booklet, together with an outline of the examination by subject, showing the number of test items in each subject, and an item analysis for each test item in the examination. The department shall hold such examination booklets and accompanying materials confidential, making its contents available to authorized officers and employees of the department and to members of the board only.

These guidelines indicate that the State shall have copies of all examination and examination subjects and an item analysis for the Review of the DOH and other State officers. 10 NYCRR Section 89.17 further provides:

> (f) The department may establish criteria for determining acceptable minimum grades for examinations held or conducted by the American Registry of Radiologic Technologists or by examining agencies of other states or political subdivisions of the United States, so that such examinations may be deemed equal or comparable to, or of greater difficulty than, the examination administered by the department. When a credential based upon an examination which is not administered by the department is presented, the department may require that the applicant presenting the credential achieve a minimum grade which is higher than the grade for passing used by such other examining agency before accepting such other examination results as the basis for waiving the requirement that the applicant pass an examination administered by the department. In addition, the department may request such other examining agencies to submit to the department such data as the department specifies. Should any agency so requested fail to submit data so specified, the department may decline, on that basis alone, to accept the certificate, registration or license of such agency in lieu of examination by this department.

Here, the DOH establishes guidelines for Defendant ARRT as to the extent of difficulty the questions may present. Section 89.18 is more direct as to the State's requirements of the ARRT specifically and directly conveys its duties upon ARRT and spells out ARRT's requirements in fulfilling the State delegated duties. Section 89.18:

> Every applicant for licensure, unless he or she holds a certificate of the American Registry of Radiologic Technologists or certificate, registration or license of another state or political subdivision of the United States as specified in section 89.17 of this Part, shall be required to pass an examination administered **for the department** by the American Registry of Radiologic Technologists as prescribed in article 35 of the Public Health Law with a grade of not less than 75. (emphasis added).

On page 4 of State Defendant's Motion to Dismiss, Ellen J. Fried, Attorney for the State Defendants, states: "In lieu of its own examination, DOH may, and does, accept 'a certificate of the American Registry of Radiologic Technologists issued on the basis of qualifications and an examination satisfactory to the department (Pub. Health Law Art. 35, § 3506(5)).'"

Accordingly, it is clear that Defendant ARRT is performing a public function ordinarily reserved for the State DOH, and Plaintiff has met the Public Function Test requirements in pleading the State actor claims against ARRT.

State Compulsion Test

In Catanzano by Catanzano v. Dowling, 60 F.3d 113 (C.A.2 (N.Y.), 1995) The Second Circuit Court affirmed the District Courts decision that certified home health agencies (CHHAs) are considered a state actor. While CHHAs are a different type of entity as ARRT, both are governed by State laws enacted to protect and enhance public health. The District Court in Catanzano concluded that it is "patently unreasonable to presume that Congress would permit a state to disclaim federal responsibilities by

contracting away its obligations to a private entity." Dist.Ct.Order Dated 7/28/94 (quoting J.K. v. Dillenberg, 836 F.Supp. 694, 699 (D.Ariz.1993)). In the face of this persuasive reasoning, the State in Catanzano argued that "certified home health agencies" (CHHAs) are private entities that make only independent professional judgments regarding the care that each patient requires, and therefore that no fair hearing rights are triggered by their determinations. The Second Circuit disagreed with the State, and concluded that, CHHA action is state action that triggers plaintiffs' due process rights. The Court in Catanzano discussed the decision in Blum v. Yaretsky, 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982), (on which ARRT bases its contention that it is not a State Actor). In Blum the Supreme Court was presented with the question whether decisions made by physicians and other agents of nursing homes to transfer or discharge Medicaid recipients amounted to "state actions" that triggered due process protections. At issue in Blum was whether the decisions made by the nursing home administrators or patients' attending physicians, were state actions.

The Second Circuit Court discussed the issue left open in Blum, in Kraemer v. Heckler, 737 F.2d 214 (2d Cir.1984). (citing Feld v. Berger, 424 F.Supp. 1356, 1360-63 (S.D.N.Y.1976) (Weinfeld, J.) and assumed that determinations made by utilization review committees (URCs) are state action. The Blum court noted that it "would have a different question" as to state action if the State "affirmatively command[ed]" the summary discharge or transfer of Medicaid patients whose care was thought to be inappropriate. Blum, 457 U.S. at 1005, 102 S.Ct. at 2786. Under the scheme in Cantazano, the CHHA is required to deny the prescribed treatment if the CHHA concludes that the prescribed home health care is inappropriate under any of two required

steps. The regulations do not provide for review or ratification of these determinations made by CHHAs. Therefore, as in <u>Kraemer</u>, decisions of the CHHAs "effectively" deny or reduce care. In this way, the state has delegated its power to deny services to the CHHAs, who are then "responsible for the specific conduct of which the plaintiff complains." <u>Blum</u>, 457 U.S. at 1004, 102 S.Ct. at 2785 (emphasis in original). "And, inasmuch as the amendments were passed with the express goal of containing Medicaid costs … the CHHAs' decisions are "influenced ... by the State's obligation to adjust benefits in conformity with changes in the cost of medically necessary care," and to that extent are unlike the independent decisions at issue in <u>Blum</u>." <u>Cantanzano.</u>  Therefore, the Second Circuit found that CHHAs are State Actors.

The case at issue here contains essentially the same allegations. The State decision of granting licensure to practice radiologic technology rests entirely on the ARRT certification exam scoring grades. Further, ARRT certifies its applicants if they score a grade of 75 or higher, in conformity with the State guidelines governing the minimum score requirements, the grading of the exams are "influenced" by the State. (10 NYCRR § 89.18; Article 35 of the Public Health Law.) Moreover, Plaintiff did not have any remedy at law to dispute the scoring of his results or with the State DOH as they have "delegated" its certification responsibilities to ARRT, thus making ARRT "responsible" for the conduct surrounding the entire process of examination, which includes, *inter alia*, grading the exam, handling the documentation, and deciding whether to release the test results to Plaintiff. This conclusion is also amplified by State Defendant's admission in its Memorandum in Support of its Motion to Dismiss, on page 9:

> "DOH does not maintain examination questions and applicant's answers, they only maintain a record of examination grades. Plaintiff admits that DOH

designated all its examination testing and record keeping of the Radiologic Technologies licensing exam to Defendant ARRT. (Amd. Comp. ¶ 47) … DOH has no duty to retrieve the information Plaintiff seeks."

 Thus, it is clear that State Defendant has effectively delegated its duties of certification and examination, together with the legal requirements associated therewith, including, but not limited to the FOIL, to ARRT.

Nexus/ Joint Action Test

The proper defendants in a § 1983 claim are those who represent the state in some capacity. Gallagher v. Neil Young Freedom Concert, 49 F.3d 1442, 1446 (10th Cir.1995). National Collegiate Athletic Ass'n v. Tarkanian, 488 U.S. 179, 191, 109 S.Ct. 454, 462, 102 L.Ed.2d 469 (1988) (quoting Monroe v. Pape, 365 U.S. 167, 172, 81 S.Ct. 473, 476, 5 L.Ed.2d 492 (1961)). Willis v. University Health Services, Inc., 993 F.2d 837 (C.A.11 (Ga.), 1993) (explaining the nexus/ joint action test). The Nexus/Joint Action test finds state action where "[t]he State has so far insinuated itself into a position of interdependence with [the private party] that it must be recognized as a joint participant in the challenged activity[.]" Burton v. Wilmington Parking Auth., 365 U.S. 715, 725 , 81 S. Ct. 856, 862 (1961) (originating the Nexus/Joint Action Test). Both private individuals and private entities can be state actors and can be held liable under § 1983. Sims v. Jefferson Downs Racing Ass'n, 778 F.2d 1068, 1076 (5th Cir.1985). Section 1983 does not require that the defendant be an officer of the State. Dennis v. Sparks, 449 U.S. 24, 27, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980). "Private persons jointly engaged with state officials in the challenged action, are acting under color of law for purposes of § 1983 purposes." Id. at 28, 101 S.Ct. at 186, citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970).

Under the Nexus/Joint Action Test, each case must be analyzed on its own facts to determine whether the interdependence between the private and state entities reflects sufficient state involvement to sustain a § 1983 claim. See <u>Burton</u> , 365 U.S. at 726 , 81 S. Ct. at 862.  <u>Sims v. Jefferson Downs, Inc.</u>, 611 F.2d 609, 611 (5th Cir.1980). <u>NBC v. Communications Workers of America, AFL-CIO</u>, 860 F.2d 1022 (11th Cir.1988). Since the State DOH depends on ARRT, its examination and licensing in obtaining State license, and State laws in administrating and grading the exams bind ARRT. As discussed above, the nexus/joint action test requirements are met and ARRT is indeed a State actor.

## PLAINTIFF HAS BEEN DENIED HIS CONSTITUTIONAL AND LEGAL RIGHTS

Defendant ARRT claims that Plaintiff has not been deprived of any right secured by the constitution or Federal Law. Contrary to what Defendant asserts, Plaintiff has been deprived of his right of due process in reviewing his examination papers and score results, and he has been deprived of his fourteenth amendment right of property and liberty, including the right to make a living in his chosen profession, which is a protected right under the fourteenth amendment. Plaintiff has also been deprived of his property interest in the examination scores to which he is entitled to pursuant to the FOIL.

<u>Plaintiff has a Protected Right to Make a Living in His Desired Profession</u>

A person has a right to choose his profession or career. This is a fundamental liberty allowed by the Fourteenth amendment. See <u>Conn. v. Gabbert</u>, 526 U.S. 286, 291-92 (1999) (observing the liberty component of the 14th Amendment includes due process right to choose one's field of private employment); <u>Lowe v. SEC</u>, 472 U.S. 181, 228 (1985) (citizens have a right to follow any lawful calling subject to licensing

requirements that are rationally related to their fitness or capacity to practice the profession); Greene v. McElroy, 360 U.S. 474, 492 (1959) (observing right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within the liberty and property concepts of the 5th Amendment"); Fosselmann v. Comm'r of Human Services, 612 N.W.2d 456-62 (Minn. 2000); Brooks v. Boilermakers, 114 N.W.2d 647, 654 (Minn. 1962) (noting an individual's occupation is property within the meaning of Constitution); Sweet v. Comm'r, 702 N.W.2d 314, 320 (Minn. Ct. App. 2005) (recognizing one's property and liberty interests in pursuing private employment).

The Court in Sail'er Inn, Inc. v. Kirby, 95 Cal.Rptr. 329, 5 Cal.3d 1 (Cal., 1971) held that the state may not arbitrarily foreclose any person's right to pursue an otherwise lawful occupation. (Citing Purdy & Fitzpatrick v. State of California, 71 Cal.2d 566, 579, 79 Cal.Rptr. 77, 456 P.2d 645.)) "The right to work and the concomitant opportunity to achieve economic security and stability are essential to the pursuit of life, liberty and happiness. As early as 1915, the United States Supreme Court declared that 'the right to work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity that it was the purpose of (the Fourteenth) Amendment to secure.' Truax v. Raich (1915) 239 U.S. 33, 41, 36 S.Ct. 7, 10, 60 L.Ed. 131. "Limitations on this right may be sustained only after the **most careful scrutiny**." (emphasis added).

Damino v. O'Neill, 702 F.Supp. 949 (E.D.N.Y., 1987) "Plaintiff's license to practice medicine is a property right which is entitled to constitutional protection and which cannot be revoked without due process of law." (Citing Bell v. Burson, 402 U.S.

535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90 (1971); <u>Horodner v. Cahn</u>, 360 F.Supp. 602

(E.D.N.Y.1973)).

Radiologic Technology, though carefully regulated, is a lawful occupation and is

therefore a property right and liberty right protected by the Fourteenth Amendment.

Plaintiff was denied due process in the review of his test scores. His exams were not

properly graded. He was not allowed a review of the grading and results. Defendants are

indeed responsible and liable for denying plaintiff his due process rights in determining

not to certify him.

<u>DUE PROCESS REQUIREMENTS</u>

The Supreme Court in <u>Mathews v. Eldridge</u>, 424 U.S. 319, 96 S.Ct. 893, 47

L.Ed.2d 18 (1976) (a) stated "(D)ue process is flexible and calls for such procedural

protections as the particular situation demands," (citing <u>Morrissey v. Brewer</u>, 408 U.S.

471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484). "Resolution of the issue here involving

the constitutional sufficiency of administrative procedures prior to the initial termination

of benefits and pending review, requires consideration of three factors: (1) the private

interest that will be affected by the official action; (2) the risk of an erroneous deprivation

of such interest through the procedures used, and probable value, if any, of additional

procedural safeguards; and (3) the Government's interest, including the fiscal and

administrative burdens that the additional or substitute procedures would entail."

<u>Mathews</u>, Pp. 332-335  <u>See</u> <u>Mathews v. Eldridge</u>, 424 U.S. 319, 348, 96 S.Ct. 893, 47

L.Ed.2d 18 (1976) . "Due process requires notice and an opportunity to be heard".

Clearly the State and the DOH have established laws and procedures to obtain records pursuant to the FOIL. However, as State Defendant States in its Memorandum of Law, page 9:

> "DOH does not maintain examination questions and applicant's answers, they only maintain a record of examination grades. Plaintiff admits that DOH designated all its examination testing and record keeping of the Radiologic Technologies licensing exam to Defendant ARRT. (Amd. Comp. ¶ 47) … DOH has no duty to retrieve the information Plaintiff seeks."

The State DOH designated ARRT to perform the States duties of Radiologic examination and certification. As such, the laws governing the DOH are conveyed upon ARRT with respect to all aspects of administering the exam, scoring the exam, keeping the records, and ensuring due process is given the individuals who sit for the exam.

Plaintiff has strong grounds for his belief that his test results were skewed. There were 20 additional questions, which were to be counted into the score, but were not. Every time ARRT reported to Plaintiff that he failed by one or two points. Plaintiff had retaken the exam numerous times. Plaintiff studied hard and knew the material. Plaintiff requested that his exam scoring be reviewed, that he be allow to see the test scores to determine if they were graded properly. He was never allowed to see his exam records nor did ARRT investigate the grading of Plaintiff's exam. Plaintiff has reached the maximum number of allowed examinations and cannot take the exam any more. Therefore, it was even more crucial that Plaintiff be given due process, since ARRT's failure to investigate the claims or to allow Plaintiff to investigate the claims caused an undue denial of Plaintiff liberty right, to pursue a career of his choice.

<u>PLAINTIFF HAS BEEN DENIED EQUAL PROTECTION</u>

Defendant contends "Felons are not a protective class for the purposes of equal protection." However Plaintiff is entitled to the same treatment in the scoring of his exam as are the other non-convicted individuals who take the exam. <u>See</u> <u>O'Bradovich v. Village of Tuckahoe</u>, 325 F.Supp.2d 413 (S.D.N.Y., 2004). "While the Fourteenth Amendment is usually invoked by people who have been discriminated against based on their membership in a protected class, it may nevertheless be invoked equally by a "class of one" who "has been intentionally treated differently from others similarly situated [with] no rational basis for the difference in treatment."" (citing <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (per curiam). Accordingly, as "a class of one," a plaintiff must show either that "there was no rational basis for the unequal treatment received ... or that the [unequal treatment] was motivated by animus," and <u>Harlen Assocs. v. Incorporated Village of Mineola</u>, 273 F.3d 494, 499 (2d Cir.2001)).

The Fourteenth Amendment of the Constitution forbids states from denying "to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XXIV, § 1. The crux of an equal protection claim is that "all persons similarly situated shall be treated alike." <u>F.S. Royster Guano Co. v. Virginia</u>, 253 U.S. 412, 420, 40 S.Ct. 560, 64 L.Ed. 989 (1920).

<u>Examination Results are Not Exempt or Time Barred by FOIL</u>

ARRT, in its Memorandum of Law in Support of its Motion to Dismiss, on page 17, states "The ARRT reuses its examinations. Am. Compl. ¶ 30."

However, Plaintiff, in his amended complaint states that Defendant ARRT contradicted itself as to whether they reuse or have changed the examination question. ¶ 30 of Plaintiff's amended complaint states that the letter written by Dr. Raymond, of ARRT stated that "ARRT reuses its examination". ¶ 32-33 of Plaintiff's Am. Compl. state that according to the ARRT website "new items are continuously added to the pool of items - multiple choice questions - called the "item bank," to ensure that exams are up-to-date and that the quality of items is continuously improving."   Also on the ARRT website: "For primary examinations (Radiography, Nuclear Medicine Technology, Radiation Therapy), the content specifications are currently revised every five years."

Since "a court must accept as true all well-pleaded  allegations in the complaint and draw all reasonable inference in favor of Plaintiff" Chambers v. Time Warner Inc., 282 F. 3d 147, 152 (2d. Cir. 2002), These factual allegations that ARRT revises its exam questions every five years, which was taken off the ARRT's website, rather than the mere statement in the letter of one of ARRT's employees, must be accepted by the Court. Because the test questions are revised, § 87(2), which applies to questions that "…are requested prior to the final administration of such questions" § 87(2)(h), is inapplicable in the instant case and ARRT, as a State Agency, was required by FOIL to produce those records. ARRT violated the FOIL by failing to release Plaintiff's records despite numerous demands to do so.

Alternatively, Plaintiff did not seek to obtain the records for his indefinite possession thus enabling others to review test questions. Plaintiff merely sought to be allowed to review the test grading and score to determine whether it was properly graded or his test results were skewed. Defendant failed to conduct any review of Plaintiff's

score grading to determine if it was graded properly. All they did was send a letter denying review. Thereby, Plaintiff was denied due process and was left with no remedy at law.

Plaintiff did appeal with ARRT the decision not to release the records, in writing, several times, after being denied his records. Defendants did not produce the records despite the appeal. ARRT's claim that Plaintiff should have brought an article 78 proceeding in State Court is not well grounded. Plaintiff brought this action for violations of predominantly Federal issues, whether Plaintiff was denied due process, 42 U.S.C. § 1983; ; the Fourteenth Amendment, and the Sherman Act. This court has supplemental jurisdiction over the FOIL claims and the Donnelly Act, pursuant to 28 U.S.C. 1367.

When the Civil Rights Act was authoritatively interpreted Monroe v. Pape, 365 U.S. 167, 183, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961), the Supreme Court said:

> " The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked. To apply res judicata to a remedy which 'need not be first sought and refused' in the state court, and which actually was not sought would be to overrule the essence of Monroe v. Pape and Lane v. Wilson, 307 U.S. 268, 274, 59 S.Ct. 872, 83 L.Ed. 1281 (1939)."

Gibson v. Berryhill 8212 653, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973) "But this Court has expressly held in recent years that state administrative remedies need not be exhausted where the federal court plaintiff states an otherwise good cause of action under 42 U.S.C. § 1983." (citing McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967)).

<u>Lombard v. Board of Ed. of City of New York</u>, 502 F.2d 631 (C.A.2 (N.Y.), 1974). "We think that the problem, strictly speaking, is not a res judicata problem. We think it is rather a question of whether the appellant has 'waived' his constitutional rights. It is not quite fair to say that he 'waived' his right to assert in the administrative agency itself that the process afforded was not 'due process.' For such an attack in the administrative agency itself on the ground of unconstitutionality would be futile. (citing <u>McNeese v. Board of Educ.</u>, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); and Judge Friendly's explanation of <u>Damico v. California</u>, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967), <u>Eisen v. Eastman</u>, 421 F.2d 560, 569 (2d Cir. 1969), cert. denied, 400 U.S. 841, 91 S.Ct. 82, 27 L.Ed.2d 75 (1970); Friendly, Federal Jurisdiction: A General View 100 & n. 111.) "Nor is the plaintiff required to make the attack in an Article 78 proceeding in the state court, for section 1983 gives him an independent supplementary cause of action, and he may choose the federal court as the preferred forum for the assertion of constitutional claims of violation of due process." <u>McNeese v. Board of Educ.</u>, supra. Indeed, if waiver is treated as a modality of exhaustion of remedy, the exhaustion, similarly, need not be of the state judicial remedy, but only of the administrative remedy. <u>James v. Board of Educ.</u>, 461 F.2d 566 (2d Cir. 1972).

<u>DEFENDANTS HAVE VIOLATED ANTITRUST LAWS</u>

State Defendants contend that Plaintiff cannot claim a Sherman Act or Donelly Act claim because he cannot allege an antitrust injury and that Plaintiff is complaining about the licensure of radiologic technology which is non-commercial conduct.

Plaintiff is not complaining about license requirements and standards, but rather the "designation" of ARRT as the State's sole agent in administering the exam, which is

used to determine whether a license to practice radiology should be granted to an individual.

ARRT has taken over the market of examinations for radiologic technologist testing, with the approval of the State. The ARRT does not consider itself to be bound by State laws, as it stated in its Motion to Dismiss. The ARRT contends that only the specific state Public health laws that deal with the types of questions, what the passing grade is, e.t.c. are applicable to them, but the laws which apply to the State and its agencies do not apply to ARRT, such as the Freedom of Information Law. Upon information and belief, the ARRT also skews test results.

Because of this monopolization of the market of radiologic technology examination, Plaintiff, and others similarly situated have no remedies at law. Plaintiff and others similarly situated cannot go take the exam directly with the State DOH as they have delegated the "task" out to ARRT. Plaintiff or others similarly situated cannot go to a different testing facility after strong belief that the test results were intentionally skewed. New York ex rel. Spitzer v. Saint Francis Hosp., 94 F.Supp.2d 399 (S.D.N.Y., 2000) "The Donnelly Act declares: "Every contract, agreement, arrangement or combination whereby ... [c]ompetition or the free exercise of any activity in the conduct of any business, trade or commerce or in the furnishing of any service in this state is or may be restrained ... to be against public policy, illegal and void." N.Y.Gen.Bus.Law § 340(1)."

<u>EVEN IF THE COMPLAINT COULD BE IMPROVED, DISMISSAL IS NOT THE APPROPRIATE REMEDY</u>.

Alternatively, if the Court determines that improvements should be made to the Complaint dismissal is not appropriate.  As seen in the Memorandum of Law "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." <u>Conley</u>, 355 U.S. at 45-46, 78 S.Ct. at 101-102. The Eleventh Circuit's "strict adherence to this rule has led [it] to hold that a district court should give a plaintiff an opportunity to amend his complaint rather than dismiss it when it appears that a more carefully drafted complaint might state a claim upon which relief could be granted." <u>Friedlander</u>, 755 F.2d at 813; <u>Dussouy v. Gulf Coast Investment Corp.</u>, 660 F.2d 594, 597-99 (5th Cir. 1981).  See <u>Guam Investment Company v. Central Building, Inc.</u>, 288 F.2d 19, 24 (9th Cir.)   It would not be in the interest of justice to permit defendants to keep the windfall of their misconduct before granting plaintiffs an opportunity to correct any supposed technical shortcomings found in the Complaint.


**WHEREFORE** For the reasons cited above, defendants' Rule 12(b)(6) should be denied.

Dated:  November 29, 2007                    _____/s/_____
                                             Shmuel Klein (SK 7212) Fed Court Only
                                             Law Office of Shmuel Klein, PC
                                             Attorneys for Plaintiff
                                             268 ROUTE 59
                                             Spring Valley, NY   10977
                                             (845) 425-2510